Nancy KNIGHT, Plaintiff/Appellee,

v.

Henry KNIGHT, Defendant/Appellant.

Court of Appeals of Tennessee,
at Jackson.

May 21, 1999.

Published Pursuant to Tennessee
Court of Appeals Rule 11.

Henry Knight, pro se.

Laura A. Keeton, Law Offices of Robert T. Keeton, Huntingdon, for Plaintiff/Appellee Nancy Knight.

FARMER, Judge.

Henry Knight (Husband) appeals the trial court's final decree which awarded Nancy Knight (Wife) a divorce and distributed to her all of the parties' marital assets. We vacate the trial court's final decree based on our conclusion that the trial court erred in failing to rule on Husband's pretrial motion that he be transported to the final divorce hearing or, alternatively, that these proceedings be held in abeyance until his release from prison.

In October 1997, Wife filed a complaint for divorce against Husband on various grounds, including irreconcilable differences, cruel and inhuman treatment, and inappropriate marital conduct.[1] Wife's complaint alleged that the parties had two children, a daughter born in 1981 and a son born in 1991. According to the complaint, the parties' daughter was in foster

---

1. We note that cruel and inhuman treatment and inappropriate marital conduct actually constitute the same ground. See T.C.A. § 36– 4–102(a)(1) (1996) (now codified at T.C.A. § 36–4–101(11) (Supp .1998)).

care and the parties' son resided with Wife. The complaint asked the trial court to award Wife an absolute divorce, to award Wife her attorney's fees and costs as alimony *in solido,* and to divest from Husband all interest in Wife's separate property which he might have by virtue of the parties' marriage. The complaint also asked the trial court to award Wife custody of the parties' minor children; however, the complaint asked the court to reserve the issue of child support "until [Husband's] release from prison."

In response, Husband, acting *pro se,* filed a Combined Motion for Appointment of Counsel and for Order to Transport. In his motion, Husband alleged that he was incarcerated in a Department of Correction (DOC) facility at Tiptonville, Tennessee, and that his release date was February 1999. The motion asked the trial court (1) to appoint legal counsel for Husband and (2) to enter an order requiring the transport of Husband from the DOC facility to the divorce hearing. In the alternative, Husband's motion asked the trial court to hold the divorce proceedings in abeyance until such time as Husband was released from incarceration in February 1999.

Husband subsequently filed a countercomplaint for divorce in which he alleged that he, and not Wife, was entitled to a divorce on the grounds of inappropriate marital conduct and adultery. In his countercomplaint, Husband asked that Wife be granted temporary custody of the parties' son and that Wife and the parties' son be permitted to live in the marital home until such time as Husband was released from prison or Wife remarried. In the event of Husband's release or Wife's remarriage, Husband asked that the marital home be sold and the proceeds divided between the parties. Husband also asked that Wife be required to "pay all up keep of said property." Husband agreed that all household belongings should be awarded to Wife, with the exception of a list of items which Husband attached to his countercomplaint.

Finally, Husband asked that Wife be required to pay all fees and costs of these divorce proceedings.

The trial court did not enter an order ruling on Husband's motion for order of transport or abeyance. Instead, the trial court proceeded to conduct the divorce trial on February 26, 1998. The trial was not transcribed, but the record indicates that the trial court decided the case upon the pleadings, the statements of Wife's counsel, and Wife's testimony. According to the Statement of Evidence, which was approved by the trial court in accordance with rule 24(e) of the Tennessee Rules of Appellate Procedure, evidence was introduced at trial to support the following findings:

1. That the parties were married on October 9, 1971.

2. That the parties have two minor children, a girl, ... and a boy, ....

3. That [Husband] was incarcerated in the state penitentiary on August 15, 1995 for sexual abuse of the Parties' daughter, which daughter was taken into the custody of the Department of Children's Services as a result thereof.

4. That [Wife] filed for divorce on October 8, 1997 alleging inappropriate [marital] conduct and cruel and [inhuman] treatment due to verbal abuse of [Wife] and sexual abuse of the [parties'] minor child.

5. That this cause was set for hearing on February 26th, 1998 and all parties were given notice thereof.

6. That the only marital assets are the [parties'] home and furnishings which have a total value of Five Thousand Dollars ($5,000.00) on which [Wife] was making payments during [Husband's] incarceration.

7. That the house and furnishings are necessary for [Wife] to maintain a home for the minor children.

8. That a Permanent Restraining Order should issue restraining [Husband] from coming about [Wife] or the minor

children except for purposes of supervised visitation.

9. That issue of child support should be reserved until [Husband's] release from prison.

After the trial, the trial court entered a final divorce decree which granted Wife much of the relief she sought in her divorce complaint. In particular, the court (1) awarded Wife an absolute divorce on the ground of inappropriate marital conduct, (2) awarded Wife custody of the parties' son, subject to supervised visitation, and (3) divested Husband of all rights to the parties' marital property, including real property, and vested same in Wife as alimony *in solido.* With the exception of reasonable supervised visitation with the parties' son, the trial court also permanently restrained Husband from coming about Wife, bothering her in any way, communicating with her, or interfering with her custody and control of the parties' son, pending further orders of the court. The trial court specifically reserved the issue of child support. The final divorce decree, entered in April 1998, indicated that the parties' daughter remained in the custody of the Department of Children's Services.

Husband timely appealed the final divorce decree to this court. In his appellate brief, filed in June 1998, Husband contended that the trial court erred in (1) failing to grant his pretrial Motion for Appointment of Counsel and for Order to Transport and (2) awarding Wife all of Husband's interest in the marital property as alimony *in solido.*

As previously indicated, the trial court did not enter an order ruling on Husband's pretrial motion prior to conducting the divorce trial; therefore, the record originally transmitted to this court did not include such an order. After Husband filed his appellate brief setting forth the issues on appeal, however, the trial court entered an order, ***nunc pro tunc,*** which indicated that, upon setting this case for trial, the court had ordered Wife's counsel to advise Husband by letter that the trial would take place at 9:00 a.m. on February 26, 1998, and that Husband had the right to participate in the trial by filing depositions as provided by Tennessee Code Annotated section 41–21–304.[2] The appellate record then was supplemented with a copy of the trial court's ***nunc pro tunc*** order. As supplemented, the record also indicated that, pursuant to the trial court's instructions, Wife's counsel had informed Husband in a letter dated December 16, 1997, that the trial was set for February 26, 1998, and that Husband had the right to participate by submitting depositions pursuant to section 41–21–304. The letter advised Husband that anything he wished to file should be filed with the Clerk and Master's office in Huntingdon, Tennessee. The letter concluded by suggesting that Husband obtain legal counsel of his choice if he had any questions.

Regarding Husband's first issue, we do not believe that the trial court erred in failing to appoint counsel to represent Husband. There is no absolute right to counsel in a civil trial. *Lyon v. Lyon,* 765 S.W.2d 759, 763 (Tenn.App.1988); *In re Rockwell,* 673 S.W.2d 512, 515 (Tenn.App. 1983). The Sixth Amendment right to counsel is limited by its terms to criminal prosecutions. *See* U.S. Const. amend. VI (providing that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of counsel for his defense").

Husband's contention that he has the right to be present at the trial or that the matter should be held in abeyance until he is released is more troublesome. The courts more frequently are being asked to consider the rights of an incarcerated par-

---

2. As pertinent, that statute provides that, "[i]n no civil case can a convict be removed from the penitentiary to give personal attendance at court, but testimony may be taken by deposition, as in other cases, the party seeking the testimony being required to make affidavit that the convict is a material witness in the cause." T.C.A. § 41–21–304(a) (1997).

ty to litigation. For years, the seminal case in this jurisdiction has been *Whisnant v. Byrd*, 525 S.W.2d 152 (Tenn.1975). There, an inmate filed suit to recover a photograph. Noting that the record did not disclose any need for immediate attention, our supreme court affirmed the trial court's order continuing the matter until the plaintiff's release from prison. The court's opinion contains the following often-quoted language:

> Art. 1, Sec. 12, of the Constitution of Tennessee provides, in part, "that no conviction shall work corruption of blood or forfeiture of estate".
>
> Art. 1, Section 17 provides, in part, "And every man, for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law".
>
> These constitutional provisions constitute clear and unequivocal declarations of the public policy of this State to the effect that no forfeiture of property rights shall follow conviction for a crime, and that every man shall have a remedy by due course of law for an injury sustained by him.
>
> That the public policy of this State opposes forfeitures for conviction of crime is well established. *Fields v. Met. Life Ins. Co.*, 147 Tenn. 464, [249 S.W. 798 (1923) ].
>
> We, therefore, hold that a prisoner has a constitutional right to institute and prosecute a civil action seeking redress for injury or damage to his person or property, or for the vindication of any other legal right; however, this is a qualified and restricted right.

We quote with approval the following language from *Tabor v. Hardwick*, 224 F.2d 526 (5th Cir.1955):

> (W)e think that the principle of the cases [relating to restraint of personal liberty] should not be extended to give them an absolute and unrestricted right to file any civil action they may desire. Otherwise, penitentiary wardens and the courts might be swamped with an endless number of unnecessary and even spurious lawsuits filed by inmates in remote jurisdictions in the hope of obtaining leave to appear at the hearing of any such case, with the consequent disruption of prison routine and concomitant hazard of escape from custody. As a matter of necessity, however regrettable the rule may be, it is well settled that, "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356. 224 F.2d at 529.

We further quote with approval the following language from *Seybold v. Milwaukee County Sheriff*, 276 F.Supp. 484 (E.D.Wis.1967):

> Regardless of the merit of the causes of action stated in their complaints, it must be remembered that the prisoner-plaintiffs have, by their own acts resulting in conviction, placed themselves in a position such that effective prosecution by themselves is not possible without interference by the court with their detention, and it is our opinion that absent unusual circumstances that interference is not warranted. In other words, their unavailability for hearings and trials is due to their convictions, and although the court believes that they should not therefore lose their rights of action by operation of a statute of limitations, we know of no authority compelling us under ordinary circumstances to deliver them from their self-caused restrictions and proceed with their cases as though they could appear at will. 276 F.Supp. at 488.

We note that Sec. 41–604 T.C.A. [now T.C.A. § 41–21–304(a) ] provides that "in no civil case can a convict be removed from the penitentiary to give personal attendance at court, but his testimony

may be taken by deposition, as in other cases . . . . "

The ensuing section provides for depositions in criminal cases and Sec. 41–606 T.C.A. [now T.C.A. § 41–21–305] authorizes the presiding judge of any court to order the warden of the penitentiary to bring a convict before the court to give testimony for the state in criminal cases, and the next section makes it the duty of the warden to produce the convict witness. There are no such provisions in our law relating to civil suits.

We hold that, absent unusual circumstances, prisoners who have filed their civil complaints, unrelated to the legality of their convictions and who have thus protected themselves against the running of any statute of limitations, will not be afforded the opportunity to appear in court to present their cases during their prison terms. Instead such matters will be held in abeyance until the prisoner shall have been released from prison and is in a position to prepare and present his case. We hold that in a proper case, and upon a proper showing of particularized need, the trial judge, in his discretion, may issue an appropriate directive requiring the attendance of the prisoner.

*Whisnant,* 525 S.W.2d at 153–54.

The *Whisnant* decision was important because it recognized an inmate's constitutional right to institute and prosecute a civil action for the vindication of any legal right. Nevertheless, the court stressed that this right was a qualified and restricted one. Following *Whisnant,* the rule in this state was that, absent unusual circumstances, inmates who filed civil actions unrelated to the legality of their convictions would not be afforded the opportunity to appear in court to present their cases during their prison terms. If the inmate successfully demonstrated a particularized need, the trial court had the discretion to issue an appropriate directive requiring the attendance of the inmate in court. In the absence of such a showing, however,

the trial court was required to hold the matter in abeyance until the inmate was released from prison or until the inmate was able to show a particularized need.

In *Smith v. Peebles,* 681 S.W.2d 567 (Tenn.App.1984), for example, an inmate sued his former attorney for malpractice. The plaintiff filed a motion seeking to have the trial court enter an order requiring the warden to have him present for trial, which was denied. He then filed a motion for a continuance, which likewise was denied. The trial court entered an order stating that, due to the plaintiff's failure to appear for trial, the matter was dismissed. This court reversed the judgment of the trial court and stated that "[o]n remand, the cause shall be placed on the docket and continued from time to time unless the Trial Judge should find 'upon a proper showing [a] particularized need' to bring the case on for trial. In that event, he may issue 'an appropriate directive requiring the attendance of the [plaintiff] prisoner.'" *Id.* at 569 (quoting *Whisnant,* 525 S.W.2d at 154).

Although our research revealed no Tennessee decisions where such a particularized need was shown in the context of a civil proceeding, this court has recognized that such situations may exist. In *Brown v. Brown,* No. 01A01–9510–CV–00480, 1996 WL 563877 (Tenn.App. Oct.4, 1996), the wife of an inmate filed for divorce, and the inmate answered and counterclaimed. He also filed a motion for a bill of particulars and a Motion for Writ of Habeas Corpus *ad Testificandum.* The trial court did not respond to the inmate's motions. On appeal, this court noted that the aforesaid writ is a common-law writ used to enable a prisoner detained in a jail or prison to be brought before the court to give evidence. It further noted that our legislature appears to have shut the door on the use of this writ in civil proceedings by the passage of Tennessee Code Annotated section 41–21–304(a), which currently provides that

[i]n no civil case can a convict be removed from the penitentiary to give personal attendance at court, but testimony may be taken by deposition, as in other cases, the party seeking the testimony being required to make affidavit that the convict is a material witness in the cause.

T.C.A. § 41–21–304(a) (1997). The court went on to state that "[w]e note, however, that despite the absolute language of the statute, relevant case law supports the proposition that the constitutional rights to due process and reasonable access to the courts may sometimes require that a party litigant be personally present in court, even if the litigant is incarcerated." *Brown*, 1996 WL 563877, at *3.

Although this court apparently has not decided this issue in an inmate's favor, we have addressed the factors to be considered by a trial court in deciding whether to issue a directive requiring the inmate's attendance. Like the present case, the inmate in *Tolbert v. Tolbert*, No. 03A01–9406–CV–00230, 1994 WL 705230 (Tenn. App. Dec.15, 1994), was a defendant in a divorce action. Unlike the present case, the defendant did not file a counterclaim for divorce. He did, however, make a request to be present at trial, which the trial court denied. On appeal, this court noted the existence of two schools of thought on this issue. One school of thought was that prisoners had no absolute right to appear in civil cases, but might be permitted to do so in the discretion of the trial court. The second view was that they had no right to appear at their civil trial at all. This court determined the better view to be the one articulated in *Strube v. Strube*, 158 Ariz. 602, 764 P.2d 731 (1988), and quoted extensively from that opinion as we do here:

The United States Supreme Court has established that a prisoner has a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72, 78 (1977). This right is founded in the due

process clause of the fourteenth amendment. *Wolff v. McDonnell*, 418 U.S. 539, 579, 94 S.Ct. 2963, 2986, 41 L.Ed.2d 935, 964 (1974). Of course, a prisoner's right of access is not absolute. *Whitney v. Buckner*, 107 Wash.2d 861, 866, 734 P.2d 485, 488 (1987). However, at a minimum, due process requires that absent a countervailing state interest of overriding significance, prisoners must be afforded **meaningful** access to the courts and an opportunity to be heard. *See Bounds*, 430 U.S. at 822, 97 S.Ct. at 1495, 52 L.Ed.2d at 79; *Boddie v. Connecticut*, 401 U.S. 371, 377, 91 S.Ct. 780, 785, 28 L.Ed.2d 113, 118 (1971).

In the instant case, the court of appeals correctly noted that, under *Price v. Johnston*, 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948), the question of whether to permit a prisoner/litigant in a civil case to be physically present in court is within the trial court's sound discretion. However, *Price* also requires that:

[the trial court's] discretion is to be exercised with the best [interests] of both the prisoner and the government in mind. If it is apparent that the request of the prisoner to argue personally reflects something more than a mere desire to be freed temporarily from the confines of the prison, that he is capable of conducting an intelligent and responsible argument, and that his presence in the courtroom may be secured without undue [inconvenience] or danger, the court would be justified in issuing the writ.

*Id.* at 284–85, 68 S.Ct. at 1059–60, 92 L.Ed. at 1369.

The court's discretion should be exercised after balancing the interest of the prisoner against the interests of the other parties and the state, including the authorities having custody of the prisoner. Some of the factors to be considered in balancing the respective interests were set forth in *Stone v. Morris*, 546 F.2d 730, 735–36 (7th Cir.1976):

In making his determination the district judge should take into account the costs and inconvenience of transporting a prisoner from his place of incarceration to the courtroom, any potential danger or security risk which the presence of a particular inmate would pose to the court, the substantiality of the matter at issue, the need for an early determination of the matter, the possibility of delaying trial until the prisoner is released, the probability of success on the merits, the integrity of the correctional system, and the interests of the inmate in presenting his testimony in person rather than by deposition. [citation omitted]

State courts that have addressed this matter have also employed a balancing test. In *In re Marriage of Allison,* 126 Ill.App.3d 453, 81 Ill.Dec. 610, 467 N.E.2d 310 (1984), a prisoner appealed a decree of dissolution that resulted from a hearing he did not attend. The Illinois court held that the trial court's scant consideration of the prisoner's petition for habeas corpus **ad testificandum** amounted to a failure to exercise its discretion. Reversing the decree, the court stated:

As a minimum, the court could have balanced the interests of the State against the interests of the respondent in being present at the trial and could have made a reasoned exercise of its discretion in the matter.

*Id.* at 463, 81 Ill.Dec. at 617, 467 N.E.2d at 317.

In *Hall v. Hall,* 128 Mich.App. 757, 341 N.W.2d 206 (1983), the prisoner had filed a divorce action. The trial court denied his request to be present. The Michigan Court of Appeals, while ac-

knowledging that a prisoner has no absolute right to testify personally, stated that fundamental fairness may require a court to afford the prisoner the opportunity to do so. The court remarked:

The issue is essentially whether the plaintiff's [prisoner's] interests in presenting his testimony outweigh the state's relevant interests in withholding from him the means necessary for such a presentation. That decision, we believe, rests in the sound discretion of the trial court. [citation omitted]

*Id.* at 761–62, 341 N.W.2d at 209.

As noted in *Stone v. Morris,* a factor to be considered in weighing a prisoner's request to be present is the "substantiality of the matter at issue." In this case, the prisoner requested to be present at a dissolution proceeding initiated by his wife. The United States Supreme Court has recognized that the marital relationship involves fundamental interests of importance to our society. *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967). The Court has further held that an individual has a constitutional right of access to courts for the purpose of dissolving a marital relationship. *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) (court access for a dissolution proceeding cannot be denied to indigents based on their inability to pay the usual filing fees).

*Strube,* 764 P.2d at 733–35. After considering these factors, this court determined in *Tolbert* that, under the record before it, the trial court did not abuse its discretion and properly refused the defendant's request to be present.[3]

---

**3.** In *Tolbert,* this court made a distinction between cases where the incarcerated party was a plaintiff and those where the inmate was a defendant. *Tolbert,* 1994 WL 705230, at *2; *see also Department of Children's Servs. v. Moss,* No. 01A01–9708–JV–00424, 1998 WL 122716, at **3–6 (Tenn.App. Mar.20, 1998);

*Cherry v. Cherry,* 1989 WL 155362, at **4–5 (Tenn.App. Dec.20, 1989). In our view, however, the principles set forth in the *Strube* decision would apply regardless of whether the inmate was pursuing the action or defending it. *See DCS v. Moss,* 1998 WL 122716, at *6.

In the present case, Husband sought to pursue a civil action by filing a counter-claim for divorce against Wife. Husband also filed a motion requesting that he be transported to the divorce trial or, in the alternative, that this matter be held in abeyance until his release from prison in February 1999. As previously noted, our supreme court's decision in *Whisnant* directed trial courts who were faced with such requests to hold the proceedings in abeyance until the inmate's release from prison, unless prior to that time the trial court issued an appropriate directive requiring the inmate's attendance at trial upon the inmate's showing of a particularized need.

Our supreme court recently had an opportunity to revisit its holding in *Whisnant.* In *Sanjines v. Ortwein & Associates,* 984 S.W.2d 907 (Tenn.1998), an inmate filed a legal malpractice complaint against the attorneys who represented him in a criminal proceeding. On the same day he filed his complaint, the inmate also filed a *pro se* petition under the Post Conviction Procedure Act[4] in which he asserted that his counsel had provided ineffective assistance in the criminal proceeding. The issue presented was whether the trial court abused its discretion in refusing to grant the inmate's motion to stay proceedings in the malpractice case until the conclusion of the post-conviction matter. In explaining its prior holding in the *Whisnant* decision, the court stated that

> [w]hile the Court in *Whisnant* was concerned with the rights of inmates to file civil complaints, the Court did not hold that a stay is necessary in all civil actions filed by incarcerated persons in order to prevent prejudice to the judicial process. Neither did the Court hold that such persons have a constitutional right to a stay of their civil actions. The Court was concerned only with the rights and qualifications of an inmate to

appear in court for trial. *Whisnant* does not discuss how a trial court should handle pre-trial matters such as stays of proceedings in inmate civil actions.

*Sanjines,* 984 S.W.2d at 910. The court held that the inmate was not entitled to a stay of his legal malpractice case, and it specifically overruled *Whisnant* to the extent that it could be interpreted as mandating an automatic stay in such cases. *Sanjines,* 984 S.W.2d at 911 n. 7.

Although the *Sanjines* case dealt with an inmate's simultaneous prosecution of both a legal malpractice claim and a post-conviction petition, the supreme court's decision is instructive as to the alternatives to a stay which are available for the trial court's consideration. The court began with the premise that "questions of stay or continuance are matters entrusted to the sound discretion of the trial judge." *Sanjines,* 984 S.W.2d at 909. As alternatives to a stay or continuance, the court suggested that trial courts consider "the feasibility of proceeding by affidavit or deposition" and "the creative use of stipulations." *Id.* at 911. The court concluded by stating that "[t]he use of such trial management techniques is also within the trial court's discretion." *Id.*

In addition to the alternatives mentioned by the supreme court in *Sanjines,* we note that this court recently rejected an inmate's argument that his due process rights had been violated by the trial court's failure to require his presence at trial where the trial court allowed the inmate to testify by videotaped deposition and also permitted the inmate to hear and participate in the proceedings by telephone. *Department of Children's Servs. v. Bottoms,* No. 01A01–9706–JV–00249, 1998 WL 124507, at **1, 6 (Tenn.App. Mar.20, 1998). We further note that a relatively new statute, enacted effective May 8, 1996,[5] authorizes trial courts in civil lawsuits brought by inmates to hold hearings "at a county jail or a facility operated by

---

4. *See* T.C.A. §§ 40–30–201 to –222 (Supp. 1996).

5. *See* 1996 Tenn.Pub.Acts. 913.

[DOC]" or to conduct hearings "with video communications technology that permits the court to see and hear the inmate and that permits the inmate to see and hear the court and any other witnesses." T.C.A. § 41–21–809 (1997).

In considering the various alternatives to a stay, the trial court also may consider the point to which the case has progressed. In a case that was disposed of on a motion to dismiss, for example, we held that neither the inmate's personal appearance nor an abeyance was required because the inmate had ample opportunity to file documents presenting his legal theories as to why the suit should not be dismissed on the pleadings. *See Montague v. Johnson City*, No. 03A01–9402–CV–00049, 1994 WL 287587, at *3 (Tenn.App. June 30, 1994), *perm. app. denied* (Tenn. Oct. 3, 1994). We have reached a similar result in summary judgment proceedings, reasoning that the inmate had sufficient means of conveying his arguments and testimony to the court via memoranda, deposition, and affidavit. *See Moffitt v. Smith*, No. 02A01–9705–CV–00095, 1998 WL 70648, at *5 (Tenn.App. Feb.23, 1998), *perm. app. denied* (Tenn. Oct. 12, 1998). These decisions suggest that an inmate's interest in appearing personally may become stronger when the case has progressed to the point of a trial. *See Moffitt*, 1998 WL 70648, at *5; *see also Wooden v. Seigenthaler*, 1986 WL 11279, at *2 (Tenn.App. Oct.8, 1986).

In the present case, the record contains no express ruling by the trial court upon Husband's pretrial motion whereby he requested that he be transported to the divorce trial or, in the alternative, that this matter be held in abeyance until his release from prison in February 1999. As pointed out by Wife on appeal, the trial court's **nunc pro tunc** order indicates that the court directed Wife's counsel to send a letter to Husband advising him of the trial date and of his right to participate by filing depositions pursuant to section 41–21–304.[6] At most, however, this order merely constituted an implicit denial of Husband's pretrial motion. The order did not explicitly rule on Husband's motion, and Husband did not receive this order until well after he filed notice of this appeal. Moreover, the letter sent to Husband by Wife's counsel neither advised Husband that it was being sent pursuant to the court's direction nor informed Husband that the trial court had ruled on his pretrial motion.[7]

In addition to containing no express ruling by the trial court on Husband's pretrial motion, the record contains no evidence that the trial court considered any of the other alternatives available to it, including, but not limited to, offering Husband the opportunity to testify by videotaped deposition, allowing Husband to participate in the trial by telephone, conducting the trial at a DOC facility, or providing Husband the opportunity to participate at trial through the use of video communications technology. The record likewise contains no evidence that the trial court considered delaying the divorce trial until Husband's release from prison, which Husband alleged would occur as early as February 1999.[8]

■ Inasmuch as the trial court failed to render a specific ruling on Husband's pretrial motion,[9] we vacate the final divorce decree entered by the trial court, and we remand this cause for the trial court to consider Husband's motion in

6. *See supra* note 2.

7. As we stated in *Sparkle Laundry & Cleaners, Inc. v. Kelton*, 595 S.W.2d 88, 93 (Tenn.App. 1979), a court "speaks only through its written judgments, duly entered upon its minutes. Therefore, no oral pronouncement is of any effect unless and until made a part of a written judgment duly entered." *Accord Evans v. Perkey*, 647 S.W.2d 636, 641 (Tenn.App.1982).

8. As we previously noted, however, the trial court reserved the question of child support until Husband's release.

9. *See Cherry v. Cherry*, 1989 WL 155362, at *5 (Tenn.App. Dec.20, 1989) (vacating final divorce decree and remanding for further proceedings where trial court entered decree without specifically ruling upon defendant inmate's request to appear personally at divorce

light of the principles set forth in this opinion. Although the trial court, in its discretion, may issue a directive requiring Husband's attendance at trial, we reiterate that the court is not required to do so. At a minimum, however, we believe that the court should consider the various alternatives set forth in *Sanjines* and in this opinion. Moreover, we believe that the trial court should consider and evaluate Husband's contention that his release from incarceration was scheduled for February 1999. Of course, if Husband has been released from incarceration since filing notice of this appeal, the action on his motion is moot and this matter can proceed to a trial on the merits.

In light of our resolution of this issue, we need not address Husband's second issue regarding the trial court's distribution of the parties' marital property.

The trial court's judgment is vacated, and this cause is remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to the appellee.

CRAWFORD, P.J., W.S., and LILLARD, J., concurs.

trial or his subsequent motion to continue    trial).